607 S.E.2d 86

**CITY OF FLORENCE, Appellant,**

v.

**George Washington JORDAN, III, Respondent.**

No. 3909.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2004.

Decided Dec. 20, 2004.

228

Kimberly Veronica Barr, of Florence, for Appellant.

David Michael Ballenger, of Florence, for Respondent.

KITTREDGE, J.:

In this appeal, we must decide whether an individual charged with DUI was adequately informed in writing of his implied consent rights before submitting to a breath analysis

test. The municipal court found the accused was not sufficiently informed and excluded the test results because the law enforcement officer purportedly failed to properly execute a preprinted rights advisement form. The circuit court affirmed this ruling. We reverse.

## FACTS/PROCEDURAL HISTORY

George Washington Jordan, III, was arrested by Florence City Police in June 1999 for driving under the influence. Jordan was taken to police headquarters where he was offered a breath test. A law enforcement officer presented Jordan with a preprinted "Advisement of Implied Consent Rights" form issued by SLED. This form sets forth three separate advisements: a "DUI Advisement," a "Felony DUI Advisement," and a "Zero Tolerance Advisement." The law enforcement officer executing the form must check the box next to the appropriate advisement. In this case, the officer checked the box for the standard "DUI Advisement." This advisement reads, in its entirety:

Subject Advised/Informed in Writing: You are under arrest for Driving Under the Influence, Section 56–5–2930, South Carolina Code of Laws 1976, as amended. The arresting officer has directed that [**breath, blood, urine (CIRCLE ONE)**] samples be taken for alcohol and/or drug testing. The samples will be taken and tested according to Section 56–5–2950 and South Carolina Law Enforcement Division procedures. You do not have to take the tests or give the samples. If you are 21 years old or older and you refuse to submit to the tests or give the samples, your privilege to drive in South Carolina must be suspended or denied for at least ninety days and your refusal may be used against you in court. If you are 21 years old or older and take the tests or give the samples and have an alcohol concentration of fifteen one-hundredths of one percent or more, your privilege to drive in South Carolina must be suspended for at least thirty days. Pursuant to Section 56–1–286, if you are under 21 years old and refuse to submit to the tests or give the samples, your privilege to drive in South Carolina must be suspended or denied for at least six months for breath/blood refusals [**ninety days for urine refusals**] and your refusal may be used against you in court. Pursuant to

Section 56–1–286, if you are under 21 years old and take the tests or give the samples and have an alcohol concentration of two one-hundredths of one percent or more, your privilege to drive in South Carolina must be suspended for at least three months.  You have the right to have a qualified person of your own choosing conduct additional independent tests at your expense and the officer must provide you affirmative assistance upon request. You have the right to request an administrative hearing within ten days of the issuance of the notice of suspension.  You must enroll in an Alcohol and Drug Safety Action Program within ten days of the issuance of the notice of suspension.

(emphasis in original).  The officer advising Jordan of his implied consent rights failed to indicate on the advisement form the type of test to be administered by circling or otherwise designating whether a "breath," "blood," or "urine" sample would be requested from Jordan.  Jordan was given a copy of the advisement form, and he consented to a breath test.  Evidence from the suppression hearing revealed that Jordan was informed a breath test would be offered.

In pre-trial proceedings, Jordan moved to exclude the results of the test, arguing the officer's failure to circle the word "breath" resulted in an incomplete advisement under South Carolina Code section 56–5–2950 (Supp.2003), which requires the accused be advised in writing of his implied consent rights prior to the administration of a breath test.  The trial judge agreed and granted the motion to suppress.  On appeal, the circuit court affirmed.  This appeal followed.

## STANDARD OF REVIEW

A trial judge's decision to admit or exclude evidence is within his discretion and will not be disturbed on appeal unless an abuse of discretion occurs.  *Elledge v. Richland/Lexington Sch. Dist. Five,* 352 S.C. 179, 185, 573 S.E.2d 789, 792 (2002). An abuse of discretion occurs when the judge's decision is controlled by an error of law or is without evidentiary support. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001).

## LAW/ANALYSIS

The City of Florence argues the failure to circle the word "breath" on the SLED form did not constitute an

incomplete advisement of Jordan's implied consent rights under South Carolina Code section 56–5–2950. We agree.

Section 56–5–2950 mandates that all persons arrested for DUI must be advised of their implied consent rights in writing before any breath test or other type of test is conducted. The statute explicitly sets forth the essential content of the advisement as follows:

No tests may be administered or samples obtained unless the person has been informed in writing that:

(1) he does not have to take the test or give the samples, but that his privilege to drive must be suspended or denied for at least ninety days if he refuses to submit to the tests and that his refusal may be used against him in court;

(2) his privilege to drive must be suspended for at least thirty days if he takes the tests or gives the samples and has an alcohol concentration of fifteen one-hundredths of one percent or more;

(3) he has the right to have a qualified person of his own choosing conduct additional independent tests at his expense;

(4) he has the right to request an administrative hearing within thirty days of the issuance of the notice of suspension; and

(5) if he does not request an administrative hearing or if his suspension is upheld at the administrative hearing, he must enroll in an Alcohol and Drug Safety Action Program.

S.C.Code Ann. § 56–5–2950(a). The statute further provides SLED "must administer the provisions of this subsection and must make regulations necessary to carry out its provisions." *Id.*

In determining whether Jordan was adequately advised in writing of his implied consent rights under section 56–5–2950, we are guided by the express legislative intent as discerned from the plain language of the statute. *See State v. Scott*, 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002); *State v. Morgan*, 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App.2002). Reading section 56–5–2950, it is beyond dispute that each of the implied consent rights enumerated in the statute was explicitly addressed in the SLED advisement form presented to Jordan. Nowhere among the rights listed in section 56–5–2950 does it

provide the accused a right to be explicitly advised in writing what specific type of test is being requested—be it blood, breath, urine, or any other test. Nor, under the language of the statute, does the accused have to be advised in writing that only one particular test is being requested to the express exclusion of any other test. Indeed, the implied consent rights provided under section 56–5–2950(a) inform the accused that he may refuse *any* test and refuse to give *any* samples.

The supposed violation in the present case, therefore, is not connected to the implied consent rights set forth in section 56–5–2950(a) as contended by Jordan. The violation, if indeed one exists, stems solely from a failure to comply with SLED procedures. The question remaining before us, therefore, is whether or under what circumstances DUI test results should be found inadmissible due to a failure by law enforcement to adhere to any of the various technical or procedural requirements prescribed by the statute or promulgated by SLED through its statutory authority.

The leading case on this point is *State v. Huntley,* 349 S.C. 1, 562 S.E.2d 472 (2002). In *Huntley,* a defendant charged with DUI sought to suppress his breath test results on the grounds the breathalyzer operator did not strictly comply with the statutory guidelines governing the administration of breath tests. Specifically, the defendant claimed the operator used a 0.10 simulator test solution rather than the prescribed 0.08 solution. *Id.* at 4, 562 S.E.2d at 473. In ruling that suppression of the test results was not warranted, the supreme court focused on whether the failure to comply with the statute affected the reliability of the evidence. The court explicitly found the operator's error did not impact the *accuracy* and *reliability* of the results—concluding "[t]here is no question the breathalyzer machine was operating properly and its results were reliable." *Id.* at 6, 562 S.E.2d at 474.

Shortly after the *Huntley* decision, the Legislature amended section 56–5–2950 to provide additional guidance to our trial courts on when to exclude test results due to the failure to comply with the statute's mandates or SLED regulations. Subsection (e) was added to the statute in 2003, which provides:

The failure to follow any of these policies, procedures, and regulations [promulgated by SLED], or the provisions of this section, shall result in the exclusion from evidence any tests results, if the trial judge or hearing officer finds that such failure materially affected the *accuracy* or *reliability* of the tests results or the *fairness* of the testing procedure.[1]

§ 56-5-2950(e) (emphasis added).

As does *Huntley*, subsection (e) makes clear that the decision to admit or exclude test results under section 56-5-2950 should not turn solely on whether the prescribed procedures were followed with the most exacting compliance. Instead, the question should be whether the violation thwarted the clear policy objectives underlying the statute—that is, to ensure suspects are informed of their rights to refuse any test and, if consent is obtained, to ensure the tests are conducted in an accurate, reliable, and fair manner.

In this case, neglecting to circle the word "breath" on the SLED form has no bearing on the accuracy or reliability of the breath test results, and Jordan does not contend otherwise; nor does the failure in any way impact upon the fairness of the testing procedure. The purpose of the SLED form is not to serve as the exclusive source of information regarding the arrest and testing procedures provided to a person accused or suspected of driving under the influence. Rather, it is designed to serve the limited—but critically important—function of advising the accused in writing of his right to refuse any test and inform him of the possible consequences arising from his decision to refuse or proceed with any test. The failure to satisfy the specific technical requirement at issue in this case—a requirement that is beyond the scope of the statutory mandate of section 56-5-2950(a)—cannot, therefore, render the advisement in the present case incomplete.

In reaching this conclusion, we do not intend to excuse the law enforcement officer's failure to execute the Implied Con-

---

1. Subsection (e) was added to section 56-5-2950 by the 2003 amendment to the statute. *See* Act No. 61, 2003 S.C. Acts 689. Though this amendment occurred after the trial of this case, subsection (e) is remedial in nature and, as such, is applied retroactively. *See South Carolina Dep't of Revenue v. Rosemary Coin Machs., Inc.*, 339 S.C. 25, 28, 528 S.E.2d 416, 418 (2000) (noting that "statutes that are remedial or procedural in nature are generally held to operate retrospectively").

sent Rights Advisement form with the care and attention the seriousness of the occasion demanded. Nor do we intend to diminish the critical role of SLED in prescribing the necessary procedures to ensure the rights of all criminal suspects are protected and the will of the Legislature is followed. Our decision today is limited to determining whether Jordan was adequately informed in writing of his implied consent rights under section 56–5–2950. On that narrow question we must answer in the affirmative.

## CONCLUSION

Because the failure to circle the word "breath" on the SLED form did not render the implied consent rights advisement incomplete or violate the implied consent statute, we find the trial court improperly suppressed evidence of Jordan's breath test results. Accordingly, the judgment of the circuit court is reversed, and the matter is remanded to the Florence Municipal Court for trial.

**REVERSED AND REMANDED.**

HEARN, C.J., and HUFF, J., concur.